UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT KAPLAN and JEFF ROACH, )<br>on behalf of themselves and all )<br>others similarly situated, )<br> )<br>Plaintiffs, )<br>v. )<br> )<br>FULTON STREET BREWERY, LLC )<br>d/b/a Goose Island Beer Company, )<br> )<br>Defendant. ) | CIVIL ACTION<br>NO. 17-10227-JGD |

# MEMORANDUM OF DECISION AND ORDER
## ON DEFENDANT'S MOTION TO DISMISS

May 11, 2018

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiffs, Scott Kaplan ("Kaplan") and Jeff Roach ("Roach"), brought this action on behalf of themselves and all others similarly situated, against Fulton Street Brewery d/b/a Goose Island Beer Company ("Goose Island"). As alleged in the complaint, the plaintiffs each purchased several bottles of specialty beer produced by the defendant that contained a bacteria, causing an "off flavor." Plaintiffs allege that although the defendant acknowledged that certain batches of its specialty beer were "off flavor" and created a refund program to reimburse purchasers of that beer, the refund program was underpublicized and available for an unreasonably short period of time, leaving plaintiffs, and a purported class of other purchasers of the beer, with worthless beer.

Plaintiffs filed a class action complaint on February 10, 2017 (Docket No. 1) and a first amended class action complaint on May 5, 2017 (Docket No. 6) ("FAC"), asserting subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The FAC purports to state claims for breach of warranty of merchantability (Count I); violation of Mass. Gen. Laws ch. 93A § 2, "Breach of Warranty of Merchantability" (Count II); violation of Mass. Gen. Laws ch. 93A § 2, "Unfair and Deceptive Notification and Recall" (Count III); unjust enrichment (Count IV); and declaratory relief (Count V).

This matter is before the court on Goose Island's motion to dismiss plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim, brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 14). For the reasons detailed herein, this court finds that plaintiffs' claims are moot, and that this court lacks jurisdiction to hear this matter. Therefore, defendant's motion to dismiss is ALLOWED.[1]

## II. **STATEMENT OF FACTS**

Federal Rule of Civil Procedure 12(b)(1) is "[t]he proper vehicle for challenging a court's subject-matter jurisdiction" including a claim, such as the one made by Goose Island, that the plaintiffs lack standing to maintain this action because their claims are moot. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). See also Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (to meet the federal case or controversy requirement under Article III of the U.S. Constitution, the plaintiff must satisfy the standing requirements of injury, causation and

---

[1] Since this court lacks jurisdiction to hear this matter, it cannot adjudicate the merits of the case. See United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007) ("The federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case."). Therefore, the court will not address defendant's Federal Rule of Civil Procedure 12(b)(6) claims.

redressability). In assessing jurisdiction at the pleading stage, the court must "accept as true all well-pleaded factual averments" in the complaint and "indulge all reasonable inferences therefrom in [plaintiffs'] favor." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 144 (1st Cir. 2002). In ruling on a Rule 12(b)(1) motion, the court may consider materials outside the pleadings. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002). Indeed, "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Valentin, 254 F.3d at 364.

Applying this standard to the instant case, the relevant facts are as follows.[2]

### The 2015 Beer Purchases and the 2016 Refund Program

Plaintiffs allege that Goose Island advertises its Bourbon County beer as high end beer with "exceptional and complex taste profiles." (FAC ¶ 66). Plaintiffs also assert that this beer is "premium, award winning beer which many consumers purchase in bulk and let . . . age in order to enhance the beer's flavor." (Id. ¶¶ 55-57).

In 2015, Kaplan purchased 12 bottles of Goose Island Bourbon County Brand Stout beer, for approximately $12.99 per bottle; two bottles of Goose Island Bourbon County Brand Coffee Stout beer, for approximately $10.99 per bottle; and one bottle of Goose Island Bourbon

---

[2] The facts are derived from the following materials: (1) the FAC; (2) the plaintiffs' 93A demand letter, which is attached as Exhibit 1 to Defendant's Memorandum (Docket No. 10) (the "Demand Letter"); (3) the defendant's letter in response to the Demand Letter and defendant's checks to plaintiffs, which are attached as Exhibit 2 to Docket No. 10 ("Def. Mem. Ex. 2"); and (4) the plaintiffs' reply to defendant's response to the Demand Letter, which is attached as Exhibit 3 to Docket No. 10 ("Def. Mem. Ex. 3").

County Brand Barleywine beer, for approximately $18.99, for a total purchase price of approximately $196.85. (Id. ¶¶ 12, 14-16).

In 2015, Roach purchased 32 bottles of Goose Island Bourbon County Brand Stout beer; two bottles of Goose Island Bourbon County Brand Coffee Stout beer; and six bottles of Goose Island Bourbon County Brand Barleywine beer. (Id. ¶ 37). Roach spent approximately $12.00 to $15.00 per bottle of beer.[3] (Id. ¶ 38).

In 2016, Goose Island discovered, and subsequently acknowledged, that certain 2015 Bourbon County beer contained a *lactobacillus acetotolerans* bacteria, which the parties agree can create a sour taste, inconsistent with the advertised flavor profile of the beer. Plaintiffs do not allege that they became ill from drinking the beer, and defendant asserts, and plaintiffs do not dispute, that the affected beer does not pose a health risk, but merely can taste different than advertised. (See id. ¶¶ 19, 39, 48; Def. Mem. Ex. 2 at 2). Kaplan and Roach allege that their 2015 Bourbon County beer purchases included beer that was "contaminated" with the bacteria and/or had "off" flavors. (FAC ¶¶ 18, 39-41).

In 2016, Goose Island released information relating to the affected beer and instituted a refund program for that beer.[4] (Id. ¶ 21). Plaintiffs allege that the refund program was "unfair" or "deceptive" in that it was insufficiently advertised, was available for an unreasonably limited

---

[3] Assuming Roach paid the higher of the two alleged purchase prices for each bottle, Roach would have paid approximately $600.00 in total for the beer.

[4] Plaintiffs refer to this refund throughout the FAC as a "recall and refund." However, they do not allege any facts suggesting that Goose Island recalled or intended to recall the affected beer, and Goose Island asserts that it did not recall the beer. In any event, the distinction is not relevant for the pertinent legal analysis. Similarly, Goose Island takes exception to the plaintiffs' characterization of the beer as "contaminated." Nevertheless, it is undisputed that beer that contained the *lactobacillus acetotolerans* bacteria could taste "off" or not as advertised.

[4]

time period, and imposed conditions requiring purchasers to prove the beer was part of the refund program in order to participate. (Id. ¶¶ 22-25, 27-30, 43-44). As a result, plaintiffs allege that Kaplan was not able to participate in the refund program, and Roach was only able to receive a partial refund for his purchases. (Id. ¶¶ 32, 46). As such, plaintiffs allege that they are left with beer that is "undrinkable," "valueless," of "diminished value," and which does not "meet the standards and quality advertised" by Goose Island. (Id. ¶¶ 33-36, 51-54). They further assert that they represent a class of "[a]ll persons who purchased a Contaminated 2015 Bourbon County Beer(s) which were subject to the 2016 [refund program,]" excluding those purchasers who were fully reimbursed through the 2016 refund program. (Id. ¶ 79).

**Plaintiffs' 93A Demand Letter and Defendant's Response**

Plaintiffs commenced this action on February 10, 2017. By letter dated the same day, plaintiffs served a 93A demand letter on Goose Island, which included the following demands on behalf of themselves and "a putative class of similarly situated persons":

1. That Goose Island immediately and satisfactorily market and notify all potential Class Members of the contaminated 2015 [Bourbon County] Beers in a manner aimed at effectively reaching all such persons (such as in-store recall notices at all locations where the contaminated [Bourbon County] Beers were sold/distributed);

2. That Goose Island refund all amounts for purchases of contaminated 2015 [Bourbon County] Beers to customers; and

3. That Goose Island extend the redemption period related to the refund of contaminated 2015 [Bourbon County] Beers for a period of no less than three years from the date of receipt of this demand.

(See Demand Letter at 2, 4).

By letter dated April 6, 2017,[5] Goose Island responded to plaintiffs' demand letter and enclosed checks in the amount of $3,000 to Kaplan and $5,000 to Roach, explaining:

> Goose Island believes that the fixed submission period for refund requests related to the 2015 Bourbon County Stout release was a reasonable limitation, particularly when no safety or health issue was involved. Nonetheless, Goose Island has granted substantiated requests for refunds on the affected variants after the expiration of the deadlines in some instances. We likewise are willing to provide refunds to Mr. Kaplan and Mr. Roach. Enclosed for that purpose are checks ... payable to [each], respectively. These payments reflect the maximum amount potentially available to them under M.G.L. ch. 93A, plus additional funds to cover court costs and attorneys' fees....
>
> ....
>
> [T]he monetary tender enclosed provides more than full relief, and we trust it will conclude this matter.

(Def. Mem. Ex. 2 at 3, 5).

By letter dated April 27, 2017, plaintiffs' attorney returned defendant's checks explaining, "[p]lease let this correspondence constitute our clients' rejection of [defendant's] individual offers purportedly made in response to [plaintiffs'] M.G.L. c. 93A class-wide demand. Please be advised that my clients deem your individual offers of settlement unreasonable in light of the class-wide demands made." (Id. at Ex. 3). Thereafter, on May 5, 2017, the plaintiffs filed their First Amended Complaint adding claims alleging violations of Mass. Gen. Laws ch. 93A.

Additional facts will be provided below where appropriate.

---

[5] By agreement, Goose Island was allowed more than the statutory 30 days to respond to the Demand Letter.

### III. ANALYSIS

Defendant moves to dismiss plaintiffs' claims as moot pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). "Because the Court must satisfy itself that Article III jurisdiction exists before examining the merits, Redfern v. Napolitano, 727 F.3d 77, 82 (1st Cir. 2013), the Court addresses the jurisdictional dispute first." Demmler v. ACH Food Cos., Inc., Civil No. 15-13556-LTS, 2016 WL 4703875, at *1 (D. Mass. June 9, 2016).

As detailed herein, this court finds that plaintiffs' individual and class action claims are moot. Therefore, this court lacks jurisdiction to hear these claims, and the court will not reach the issue whether dismissal is warranted under Rule 12(b)(6).

#### A.   Standard of Review - Mootness

"The Constitution limits the judicial power of the federal courts to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Katz, 672 F.3d at 71 (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962)). To meet the personal stake requirement, the plaintiff must establish "injury in fact," a "direct causal connection between the challenged action and the identified harm" and "that a favorable resolution of [the plaintiff's] claim would likely redress the professed injury." Katz, 672 F.3d at 71-72.

Relatedly, federal courts only have jurisdiction to adjudicate "live cases or controversies." Thomas R.W. v. Mass. Dep't of Educ., 130 F.3d 477, 479 (1st Cir. 1997). As the court in Johansen v. Liberty Mutual Group, Inc. explained,

> "When a case is moot ... a case or controversy ceases to exist, and dismissal of the action is compulsory." Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001). "A case becomes moot, however, 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (quoting Knox v. Service Employees, 132 S. Ct. 2277, 2287 (2012)).
> 
> To assess whether a claim is moot, a court need first determine what the claimant seeks. Bais Yaakov of Spring Valley v. ACT, Inc., 798 F.3d 46, 53 (1st Cir. 2015). A case is not moot if the issues presented are "live" or if the parties retain a "legally cognizable interest in the outcome." Knight v. Mills, 836 F.2d 659, 670 (1st Cir. 1987). "Another way of putting this is that a case is moot when the court cannot give any 'effectual relief' to the potentially prevailing party." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004). "[A] case not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." Id.; Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 468 (1st Cir. 2009) ("We will only find a case moot if an intervening event 'makes it impossible for the court to grant any effectual relief.'") (quoting Gulf of Me. Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002)).

Civil Action No. 1:15-cv-12920-ADB, 2016 WL 7173753, at *2 (D. Mass. Dec. 8, 2016) (footnote omitted).

Goose Island moves to dismiss the First Amended Complaint, arguing that Kaplan and Roach's claims are moot because Goose Island has unconditionally offered all of the relief that plaintiffs seek and there is no more relief that the court could provide. (See Def. Mem. at 1-2). Defendant further argues that as plaintiffs' individual claims are moot, this court lacks jurisdiction to hear their class action claims. For the reasons detailed below, this court agrees.

### B. Settlement Offers and Assessing Mootness

In Campbell-Ewald Co. v. Gomez, the Supreme Court ruled "that an unaccepted offer to satisfy the named plaintiff's individual claim was not sufficient to render a case moot, when the complaint sought relief on behalf of the plaintiff and a class of persons similarly situated." Bais Yaakov of Spring Valley v. ACT, Inc., 221 F. Supp. 3d 183, 186 (D. Mass. 2016) (analyzing Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 666-72, 193 L. Ed. 2d 571 (2016)). While several of the Justices in concurring and dissenting opinions "stated expressly that tendering a check or depositing one with the district court would moot a plaintiff's individual claims[,]" the opinion of the Court left open the question whether a claim would be moot "if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." Bais Yaakov, 221 F. Supp. 3d at 186 (quoting Campbell-Ewald, 136 S. Ct. at 672, 675, 680, 684). "The Court also did not reach the question of whether the purported class representative's claim for class relief would prevent the case from becoming moot even if the plaintiff's individual claim was mooted." Bais Yaakov, 221 F. Supp. 3d at 186.

Since Campbell-Ewald, at least three District Judges in Massachusetts have held that a defendant's offer to provide all requested relief for a plaintiff's individual claims in a purported class action mooted the individual plaintiff's claims. See Bais Yaakov, 221 F. Supp. 3d at 187-88 (individual plaintiff's claims under the Telephone Consumer Protection Act (TCPA) were moot where defendant unconditionally tendered everything the plaintiff was seeking on an individual basis, including statutory damages in the amount to which plaintiff claimed to be entitled, an injunction against future statutory violations, and costs and attorneys' fees if awarded by the

[9]

court); South Orange Chiropractic Ctr., LLC v. Cayan LLC., Civil Action No. 15-13069-PBS, 2016 WL 1441791, at *4-5 (D. Mass. Apr. 12, 2016) (where defendant "has already fallen on its sword in unconditional surrender with respect to Plaintiff's individual [TCPA] claims" by providing plaintiff with the full amount of statutory damages and the full scope of equitable relief, the named plaintiff's claims were moot); Demmler, 2016 WL 4703875, at *4-5 (where defendant discontinued the labelling plaintiff claimed was misleading before suit was filed, defendant's unconditional tender of a check that provided plaintiff with full relief of his damages under ch. 93A rendered individual's claims moot). In these cases, the court analyzed the mootness of the individual plaintiff's claims separately from the class action claims. As detailed more fully below, in Bais Yaakov and South Orange, despite finding the individual plaintiffs' claims moot, the courts went on to hold that the class action claims nevertheless remained viable since the TCPA claims fell into the "inherently transitory" exception to the mootness doctrine in that "it is certain that other persons similarly situated will continue to be subject to the challenged conduct and the [TCPA] claims raised are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." South Orange, 2016 WL 1441791, at*6. In Demmler, the court concluded that the class action claims were moot and that the inherently transitory exception to the mootness doctrine did not apply. Demmler, 2016 WL 4703875, at *7-8.

After careful consideration, this court finds the two-step analysis of Bias Yaakov,[6] South Orange and Demmler persuasive. Thus, the court will first determine whether the payment to the plaintiffs in the instant case mooted their individual claims, and, if so, will then determine the payment's effect on the class action claims. This two-step process allows a defendant to legitimately seek to terminate litigation where it admits responsibility, and insures that the court litigates only "live" cases and controversies. It is also consistent with the entire purpose of the demand letter under Mass. Gen. Laws ch. 93A, which is "(1) to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct and (2) to operate as a control on the amount of damages which the complainant can ultimately recover." Hermida v. Archstone, 950 F. Supp. 2d 298, 303 (D. Mass. 2013) (quoting Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288, 475 N.E.2d 727, 736 (1985)) (additional citations omitted). By having a second step to assess the continued viability of the purported class action claims, even if the individual claims are moot, the court can prevent the unfair "picking off" of plaintiffs by defendants seeking to prevent the court from addressing legitimate claims.

As detailed herein, applying this two-step approach warrants the dismissal of this case as moot.

---

[6] The cited decision in Bias Yaakov, 221 F. Supp. 3d 183 (D. Mass. 2016), on which this court relies, is the culmination of a number of decisions by the District Judge and the First Circuit. These cases exemplify the development of the law relating to whether tenders of payment moot putative class actions prior to class certification.

### C. The Individual Claims are Moot

"To determine if [defendant] has in fact provided [plaintiffs] with all of the relief sought, the Court must first look to the claims and the relief requested as set forth in [plaintiffs'] Complaint" and "the relief offered." Johansen, 2016 WL 7173753, at *2-3.

Individual Claims - Monetary Relief

By their claims for breach of warranty of merchantability (Count I), violations of ch. 93 (Counts II and III), and unjust enrichment (Count IV), plaintiffs in the instant case are seeking monetary relief for the affected beer that they purchased, for the harm they experienced as a result of the "unfair" refund program, for court costs and for attorneys fees.[7] Defendant argues, and this court agrees, that defendant's unconditional tender of checks to the plaintiffs mooted their claims for monetary relief.

Here, the defendant unconditionally tendered checks to the plaintiffs that provided for all the monetary damages to which plaintiffs would be entitled, and imposed no preconditions on the plaintiffs. Specifically, Goose Island mailed checks to Kaplan and Roach, via their attorney, in the amounts of $3,000 and $5,000, respectively, without precondition. It is undisputed that these amounts represent more relief for plaintiffs' claims for money damages than that theoretically available on the facts alleged, as those amounts exceed the treble damages theoretically available to plaintiffs pursuant to ch. 93A.[8] Although plaintiffs plead several

---

[7] While plaintiffs appear to seek punitive damages (see FAC at 8), apart from multiple damages available under ch. 93A, punitive damages are not available to plaintiffs on the basis of the causes of action that they have pled in this case.

[8] "[T]reble damages under the Massachusetts unfair business practices law ... [are] available ... where a defendant has failed to offer a settlement 'reasonable in relation to the injury actually suffered.'" Cooper v. Charter Commc'ns Entm'ts I, LLC, 760 F.3d 103, 107 (1st Cir. 2014) (quoting Mass. Gen. Laws ch. 93A § 9(3)).

different legal theories as the basis for their claim for monetary damages (breach of implied warranty, violations of ch. 93A, and unjust enrichment), all theories ultimately seek the same recovery – damages for the value of the "off-flavored" beer that they purchased. This court concludes that even after Campbell-Ewald, the proffer of these checks satisfy the plaintiffs' claims, regardless of whether the plaintiffs chose to accept the checks. See Demmler, 2016 WL 4703875 at *4-5, and cases cited.

To the extent that the plaintiffs allege that they were injured by the "unfair" refund program, the injury they allege is that they were unable to fully participate in the refund program. Thus, their claim for damages is equivalent to the value of the beer for which they were unable to collect a refund, which is no more than the value of the beer that they purchased. In unconditionally tendering more than the maximum amount that plaintiffs could recover under ch. 93A (treble damages), Goose Island satisfied plaintiffs' claims under the legal theories pled in Counts I-IV. See Calimlim v. Foreign Car Ctr., Inc., 392 Mass. 228, 235-36, 467 N.E.2d 443, 448 (1984) ("[W]here the same acts cause the same injury under more than one theory . . . duplicative damage recoveries will not be permitted. . . . Where injury is incurred because of conduct which comprises the elements of any common law, statutory, or regulatory cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not be allowed. In appropriate cases, preference should be given to entry of judgment under the Consumer Protection Act . . . .").

Moreover, neither plaintiff asserts that he, individually, is entitled to more money than the amount of the check that he received. Rather, plaintiffs argue that the checks do not satisfy their class demands for monetary relief or their demands for non-monetary relief. (See Pls.

[13]

Mem. (Docket No. 17) at 12-13; Def. Mem. Ex. 3 at 1 ("Please be advised that my clients deem your individual offers of settlement unreasonable in light of the class-wide demands made.")). Those arguments will be addressed below.

The plaintiffs make two additional arguments as to why the checks do not moot their claims; however, neither is persuasive. First, plaintiffs characterize the checks as an unaccepted settlement offer, arguing that rejected settlement offers do not serve to moot claims. (See Pls. Mem. at 7-8). However, that argument fails as the checks in the instant case were tendered to plaintiffs unconditionally, and thus do not represent a settlement offer. See Demmler, 2016 WL 4703875, at *4-5 (finding that defendant's unconditionally tendered check did not represent a settlement offer, and served to moot plaintiff's ch. 93A claim). Rather, this situation is analogous to the situation acknowledged by various Justices in Campbell-Ewald that "tendering a check or depositing one with the district court would moot a plaintiff's claims." Bias Yaakov, 221 F. Supp. 3d at 186 (citing Campbell-Ewald, 136 S. Ct. at 672, 675 (Thomas, J. concurring), 680 (Roberts, C.J. dissenting), 684 (Alito, J. dissenting)).

Second, plaintiffs argue that the collateral source rule prevents defendant's checks from mooting plaintiffs' individual claims for monetary relief because the checks were tendered by Anheuser-Busch as opposed to Goose Island. (See Pls. Mem. at 8-9). See also Johansen, 2016 WL 7173753, at *4 (questioning whether collateral source rule would defeat claim that payment rendered case moot). This court does not agree. The collateral source rule "generally states that 'benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer do not diminish the damages otherwise recoverable from the wrongdoer.'" Merriam v. Demoulas, Civil Action No. 11-10577-RWZ, 2013 WL 2422789, at *3 (D. Mass. June

3, 2013) (quoting 22 Am. Jur. 2d Damages § 392 (West 2013)).  However, it is clear from defendant's corporate disclosure statement that Anheuser-Busch is not a source "wholly independent of and collateral to" Goose Island.  (See Docket No. 11).  Therefore, the collateral source rule does not apply.

### Individual Claims - Injunctive Relief

Plaintiffs argue that even if the defendant's checks satisfied the full extent of their claims for monetary relief, their case is nonetheless "live" due to their outstanding claims for injunctive and declaratory relief.  (Pls. Mem. at 9-11).  This court disagrees.

As a preliminary matter, the plaintiffs have not asserted a claim for injunctive relief.  There is no count in their complaint seeking an injunction and the only possible reference to such relief in their complaint is a request within their prayer for relief for "[a]n order requiring Goose Island to properly resolve the matters addressed herein, including proper notification and remediation of the Contaminated beers recall[.]"  (FAC at 18, ¶ I).  Plaintiffs argue that this language constitutes a request for injunctive relief requiring Goose Island to reopen the refund period along with "adequate nationwide publication and notice of the same."  (Pls. Mem. at 8).  This is an overly generous reading of the language of the complaint.  The plaintiffs complain that notices were not broadly disseminated in all appropriate states and locations, and that the refund period should have been longer.  (See FAC ¶¶ 132-140).  Notably, however, the relief they are seeking for the alleged "unfair and deceptive notification and recall" is monetary damages and not injunctive relief.  (See FAC at Count III).  At most, plaintiffs have identified in the complaint the method by which they will seek to identify class members who would be eligible for a refund, and the appropriate class period.  In short, there is no claim for injunctive

[15]

relief in the complaint. See Herskowitz v. Apple, Inc., 301 F.R.D. 460, 481-82 (N.D. Cal. 2014) (where request for injunctive relief was just to establish a process by which claimants could be paid, plaintiffs' "claim for injunctive relief is, in essence, a claim for monetary damages rather than for 'final injunctive relief.'").

Moreover, even if the plaintiffs were seeking injunctive relief, plaintiffs lack standing to seek such an injunction because they do not allege a "real and immediate threat of future injury" to themselves, as required to establish standing for injunctive relief. O'Hara v. Diageo-Guinness, USA, Inc., C.A. No. 15-14139-MLW, 2018 WL 1542367, at *15 (D. Mass. Mar. 29, 2018) (quoting O'Shea v. Littleton, 414 U.S. 488, 496, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974)). See also Derby v. Jos A. Bank Clothiers, Inc., C.A. No. 14-12347-FDS, 2014 WL 7361023, at *8 (D. Mass. Dec. 23, 2014) ("If plaintiff is under no threat whatsoever of future injury, he cannot maintain a claim for injunctive relief."); id. at *6 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]" (quoting O'Shea v. Littleton, 414 U.S. at 495, 94 S. Ct. at 676)).[9]

Here, plaintiffs allege that the affected beer was only produced in 2015 and was limited in quantity. Plaintiffs do not allege that they are at risk of purchasing this "contaminated" beer in the future. To the extent they argue that they were harmed by the "unfair" refund program, that program is over, and the injury caused – plaintiffs' inability to secure a full refund for the

---

[9] For this reason, among others, the instant case differs significantly from Johansen, on which the plaintiffs rely. In Johansen, the plaintiff had sought broad injunctive relief to stop improper phone calls under the TCPA, while one (of several) defendants offered a narrow injunction. The court ruled that plaintiff had not received all the relief he was requesting, so his claim was not moot. Johansen, 2016 WL 7173753, at *4. In the instant case, the plaintiffs are not entitled to injunctive relief.

"off-flavored" beer that they purchased – has been fully redressed by defendant's unconditionally tendered checks.

Because plaintiffs do not satisfy Article III's requirement of an imminent injury, their prayer for injunctive relief, if stated, must be dismissed. To the extent that plaintiffs seek to assert the same claim for injunctive relief on behalf of their alleged class, that claim fails too, because, "[i]n the class-action context, at least one named plaintiff must meet the standing requirements; a threat of future injury to other, unnamed members of the class does not suffice." Id. (citing Warth v. Seldin, 422 U.S. 490, 502, 95 S. Ct. 2197, 2207, 45 L. Ed. 2d 343 (1975)). Here, where plaintiffs do not have standing to seek their requested injunctive relief on behalf of themselves, and there is no threat of future injuries to others, their claim on behalf of other unnamed class members must fail too for lack of jurisdiction.

## Individual Claims - Declaratory Relief

Plaintiffs' individual claim for declaratory relief fares no better. In Count V of the FAC, plaintiffs seek a declaration that Goose Island "violated the warranty of merchantability"; that Goose Island's "acts and omissions" were "unfair and deceptive" and were "committed willfully, knowingly and/or in bad faith"; that Goose Island's response to plaintiffs' "class-wide Massachusetts Consumer Protection Act Demand Letter was unreasonable"; that Goose Island was "unjustly enriched by Plaintiffs' and the Class's purchase of Contaminated Goose Island beers, and continued retention of the same funds"; that the "Recall was unfair, deceptive and unreasonable"; and that "Goose Island should provide a full refund to Plaintiffs and the Class for the full amount of all outstanding monies paid in consideration for the Contaminated Goose Island beer." (FAC ¶¶ 164-170). Plaintiffs' declaratory judgment claim, therefore, "merely

duplicates" the other counts in their complaint and thus is "subject to dismissal."  O'Hara, 2018 WL 1542367, at *15 (quoting Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013)).  See also id. (citing Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (holding that "[t]o the extent [plaintiff] seeks a declaration of defendants' liability for damages sought for his other causes of action," the claim must be dismissed as "merely duplicative").  Adding a claim for declaratory relief does not broaden plaintiffs' standing.

Thus, this court concludes that it lacks jurisdiction to hear any of plaintiffs' individual claims for relief.  As detailed below, these plaintiffs' efforts to pursue claims on behalf of other alleged class members is equally unavailing.

### D. The Class Claims Are Also Moot

The plaintiffs argue that their individual and class claims should not be held moot because the "inherently transitory" exception to the mootness rule applies in this case.  The general rule in the First Circuit is that cases brought as putative class actions "ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."  Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) (citations omitted).  There is, however, a "narrow[] exception to general principles of mootness" where issues presented in a complaint are "capable of repetition, yet evading review."  Id. at 534 (quotation omitted).  As detailed above, the Bias Yaakov and South Orange courts relied on this "inherently transitory" exception to the mootness rule in concluding that the purported class-action TCPA claims were not moot.  See South Orange, 2016 WL 1441791 at *6-7.  In particular, the courts relied on the fact that by settling with TCPA plaintiffs, the defendants could moot claims even before the court had the

chance to rule on a class certification motion.  See id. at *6.  The court further acknowledged that there was a well-recognized strategy by defendants in TCPA cases to "pick-off" plaintiffs by settling their individual claims and thereby preventing judicial review.  As the court held in Bias Yaakov,

> The *South Orange* court aptly noted that the instant issue—satisfaction of a named plaintiff's TCPA claims before the court rules on class certification—is a recurring strategy: "a flock of TCPA cases has demonstrated a widespread whac-a-mole practice aimed at picking off a named plaintiff before class certification."  *South Orange*, 2016 WL 1441791, at *6.

221 F. Supp. 3d at 188.  See also Suk Jae Chang v. Wozo LLC, Civil Action No. 11-10245-DJC, 2012 WL 1067643, at *9 (D. Mass. Mar. 28, 2012) (attempt to settle putative class action alleging violation of Electronic Funds Transfer Act due to bait-and-switch advertising to individuals playing internet games appeared to be an attempt to "pick off" the plaintiff and did not moot class action).

There is no evidence of a comparable scheme in this case where Goose Island voluntarily instituted a refund program before suit was filed for beer that was produced on one occasion.  The plaintiff has offered no evidence that Goose Island is likely to produce more "contaminated" beer or that Goose Island has engaged in a pattern and practice of tendering full relief to named plaintiffs in putative class actions in related cases prior to class certification as an effort to "thwart[] judicial review[.]"  Cruz, 252 F.3d at 535.  Absent such evidence of either continuing wrongful behavior or any nefarious plan to "pick off" plaintiffs to evade judicial review, the ordinary principle that the settlement of individual claims moots potential class action claims applies.  See Demmler, 2016 WL 4703875 at *7-8 ("inherently transitory" exception did not apply where plaintiff offered no evidence that the defendant in that case had

engaged in a pattern of tendering full relief to named plaintiffs in class actions prior to class certification).

As the First Circuit stated in Cruz, "[o]ne swallow does not a summer make, and [the court has no] acceptable basis to conclude, without a more substantial factual predicate, that the [defendant] has devised a scurrilous pattern and practice of thwarting judicial review by [its conduct in order to] ensure that no federal court ever will be in a position either to resolve the underlying issues or to rule on a class certification motion." Cruz, 252 F.3d at 535. Therefore, the "inherently transitory" exception to the mootness rule does not save plaintiffs' claims. Both the individual claims and class claims are moot. Therefore the complaint must be dismissed.

## IV. **CONCLUSION**

For all the reasons detailed herein, defendant's "Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (Docket No. 14) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge